AO 91
Rev. 11/82

CRIMINAL COMPLAINT

11-8292-LRJ

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br><br>**ALEX SIGUA** | Docket No.<br><br>MAGISTRATE'S CASE NO. |
| Complaint for violation of Title 18 United States Code § 1341 | **SA11-364M** |
| NAME OF MAGISTRATE JUDGE<br>MARC L. GOLDMAN | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Orange County |
| DATE OF OFFENSE<br>November 2008 through at least July 2011 | PLACE OF OFFENSE<br>Orange County and elsewhere | Address of ACCUSED (IF KNOWN) |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

From in or around November 2008 to in or around July 2011, in Orange County, within the Central District of California, and elsewhere, defendant **ALEX SIGUA**, doing business as ASAP Computer Parts, Inc., knowingly and with the intent to defraud participated in and executed a scheme to defraud Cisco, Inc. as to material matters, and to distribute, sell, supply, and furnish counterfeit Cisco, Inc. products through commercial interstate carriers in violation of Title 18, United States Code, Section 1341. Specifically, on or about July 16, 2010, defendant **ALEX SIGUA** caused twenty counterfeit Cisco products to be sent by UPS Ground from DTI in New York to PC Lantech Incorporated in Lake Forest, California.

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:
(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE:

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>/S/<br><br>SPECIAL AGENT JEFF MASIAK<br>HOMELAND SECURITY INVESTIGATIONS |
|---|---|

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE(1)<br><br>**MARC L. GOLDMAN** | DATE July 19, 2011 |
|---|---|

1) See Federal Rules of Criminal Procedure rules 3 and 54.
AUSA: JLW:lnz

## AFFIDAVIT

I, Special Agent Jeff Masiak, being duly sworn, do hereby depose and state the following:

## BACKGROUND OF AFFIANT

1. I am a Special Agent (SA) of the United States Department of Homeland Security, Homeland Security Investigations (HSI), assigned to the Office of the Assistant Special Agent in Charge, Orange County (ASAC/OR). I have been an SA with HSI for approximately one (1) year. As part of my duties, I currently investigate violations of criminal law relating to the illegal importation of contraband, including counterfeit goods, Intellectual Property Rights (IPR) violations, and related money laundering. My duties consist of enforcing the Tariff Act and other laws, rules, and regulations governing the import and export of goods and merchandise and payment of duties and fees. Your affiant has spoken to and worked with other agents with extensive experience in investigations pertaining to the trafficking of counterfeit goods. I am acquainted with all aspects of the investigation described below.

2. During my career, I have conducted and participated in numerous complex, multi-defendant

1

investigations involving commercial fraud, money laundering, manufacture of fraudulent documents, and related financial crimes. I have conducted and participated in investigations that have resulted in the identification, seizure, and federal forfeiture of thousands of dollars in cash and assets, and the seizure and forfeiture of thousands of dollars in counterfeit goods.

3. As part of my employment, I have received training from HSI relative to investigative techniques and the conduct of fraud, IPR, and financial investigations. I have a working knowledge relating to commercial fraud, including under-valuation, misclassification, and trademark/copyright violations.

### PURPOSE OF AFFIDAVIT

4. This affidavit is made in support of a criminal complaint and arrest warrant for Alex SIGUA (SIGUA), Corporate Officer and Registered Agent for ASAP Computer Parts, Inc. ("ASAP"), located at 11039 Legacy Blvd., Unit #303, Palm Beach Gardens, FL 33410, for a violation of Title 18, United States Code, Section 1341 (Mail Fraud).

5. The facts set forth in this affidavit are based upon my personal review of the documents described herein, information obtained from other SAs and witnesses, and my

own training and experience. This affidavit is intended to show that there is sufficient probable cause for the requested arrest warrant and does not purport to set forth all of my knowledge, or all the knowledge of other HSI SAs, of the investigation into this matter. In addition, when relying on statements made by others, such statements are set forth in substance and in pertinent part, not verbatim.

## BACKGROUND OF THE INVESTIGATION

6. From reviewing court records and HSI reports, and from my personal knowledge of the investigation, I know the following:

    a. On April 6, 2011, an information was filed against Victor Caron (Caron) in <u>United States of America v. Victor Caron</u>, SA CR 11-81-AG, in the Central District of California for trafficking in counterfeit Cisco products, in violation of Title 18, United States Code, Section 2320(a). Caron agreed to cooperate with the government and provided HSI agents access to Caron's company, Decision Tech Incorporated (DTI), and its documents, including purchase orders, sales invoices, and shipping records.

    b. From reviewing DTI sales records and from statements made by Caron, HSI agents learned that ASAP purchased counterfeit Cisco products from Caron at DTI. Specifically, SIGUA, through ASAP, purchased counterfeit

3

Cisco products from Caron, who then in turn shipped the counterfeit Cisco products via interstate mail carriers from DTI to SIGUA's customers, on behalf of ASAP. SIGUA invoiced his customers, who paid SIGUA for the counterfeit Cisco goods delivered by DTI. This is known as "drop-shipping." DTI drop-shipped multiple orders to customers located in the Central District of California on behalf of SIGUA and ASAP.

c.  Based on a review of documents supplied by DTI, I learned that between November 2008 and January 2011, ASAP purchased at least $82,000 worth of counterfeit Cisco product from DTI.

d.  Caron told HSI agents that SIGUA knew he was purchasing and/or drop shipping counterfeit Cisco products through DTI.

**SIGUA AND ASAP ARE NOT AUTHORIZED TO SELL CISCO PRODUCTS**

7.  On May 17, 2011, HSI agents received an e-mail from Kenny Carter, Cisco Systems, Program Manager for Anti-Counterfeit Operations. The e-mail stated that Cisco conducted a query of their database and determined that neither SIGUA nor ASAP are "licensed partners with Cisco," which means that neither SIGUA nor ASAP have signed Cisco's International Channels Partner Agreement (ICPA), which is a contract that would allow a company to purchase Cisco

4

products through Cisco Distributors or, in some cases, directly from Cisco.

8. In addition, Carter informed HSI agents of Cisco's past business dealings with ASAP. In October 2010, Cisco, through an agent, purchased eight (8) pieces of Cisco hardware from EZ systems in Santa Ana, CA. The products that Cisco purchased were drop shipped from ASAP from a Florida address. The products and testing results from the buy were as follows: four (4) of the GLC-FE-100FX - all 4 units were genuine; two (2) of the WIC-1T - both units were counterfeit, yet had the Cisco trademarks; and two (2) of the WIC-1DSU-T1-V2 - both units were counterfeit, yet had the Cisco trademarks.

## CONTACT BETWEEN SIGUA AND CARON CONFIRM THE COUNTERFEIT CISCO SCHEME

9. I reviewed an electronic mail (email) message exchange between <alex@asapcomputerparts.com> (SIGUA) and <victor@dtiny.com> (Caron), provided to HSI agents by Caron, that occurred over the course of the dates of May 13, 2011 to May 16, 2011. The exchange was initiated by a message dated May 13, 2011 from <victor@dtiny.com> (Caron) addressed to <alex@asapcomputerparts.com> (SIGUA), informing SIGUA that Caron's Chinese supplier had been unreachable for two months, essentially temporarily

incapacitating Caron's business, but that his Chinese contact had resurfaced and would be shipping product. Caron concluded the message by telling SIGUA to inform him what product he needed so that they could do business. On May 13, 2011, <alex@asapcomputerparts.com> (SIGUA) responded to <victor@dtiny.com> (CARON) in an email message, which stated the following:

    a. From SIGUA to Caron: "*Hi Vic I lost 95% of my customers and lost money too, we can start again from new page and I can try to call my customers again and try to make them buy again—what products you getting? And when you will have them in US? Let me know*"

On May 16, 2011, <victor@dtiny.com> (Caron) responded to <alex@asapcomputerparts.com> (SIGUA) in an email message, which stated the following:

    b. From Caron to SIGUA: "*Hi Alex, I am so sorry you lost all this money, this fiasco has cost me a lot of money too, You knew the guy in China just disappeared for the last two months. I found a couple of Chinese suppliers who send me samples, one send me Cisco labels all wrong. the other one has good product all looked right, who for a couple of extra $$ I can request labels with good serial*

> numbers. The shipment of 100 each GLCSXMM, the LHSM
> and the GLCT is going to be in the US I hope Friday,
> and should be here early next week, See how fast you
> can get your customers back Thanks"

10. On June 14, 2011, Caron contacted SIGUA via telephone. This consensually monitored telephone conversation was recorded. During the conversation, Caron informed SIGUA that the product he received from China was labeled incorrectly. Caron then explained that he had to re-label the products with the correct labels, and that was causing delay. After Caron explained the problem with the labels, the following statements were made:

    a.    SIGUA states: *"I'm holding WSG 5483 do you have that in ten pieces?"*

    b.    CARON states: *"83's?"*

    c.    SIGUA states: *"Yes"*

    d.    CARON states: *"No, I just got in the T's, LH's and the SX's, and I'm just putting on the labels as they come in, the orders. As the orders come in, I just put the labels on. It's such a pain in the neck. You have to take it out of the box, take the label off, put the label on, unbelievable."*

    e.    SIGUA states: *"Ok, ok, ok, let me know when something like, I will email you or IM you, ok?*

    f.    CARON states: "*Ok*"

    g.    SIGUA states: "*Thank you, Vic.*"

11. I reviewed an electronic mail (email) message exchange between <alex@asapcomputerparts.com> (SIGUA) and <victor@dtiny.com> (Caron), provided to HSI agents by Caron, that occurred over the course of the dates of July 14, 2011 to July 15, 2011. The exchange was initiated by a message dated July 14, 2011 from <alex@asapcomputerparts.com> (SIGUA) addressed to <victor@dtiny.com> (Caron), which stated the following:

    a.    From SIGUA to Caron: "*>Hi>>Qty8-..........glc-sx-mm>>Qty10-glc-lh-sm>>Qty4..WS-G5483>>>>Second order:>>Qty4-glc-t>>Qty6-glc-sx-mm>>Qty4-ws-g5484.>>>Let me know if you have this*"

On July 15, 2011, <victor@dtiny.com> (Caron) responded to <alex@asapcomputerparts.com> (SIGUA) in an email message, which stated the following:

    b.    From Caron to SIGUA: "*HI Alex Sorry I just see your email, send p/o I have the sx, lh, t's, 83 and 84 all in stock, it looks like all the problem we had with the labels have been solved, I put all the labels on and they look great, The last few months dealing with the Chines was a*

> *total fiasco, I believe they will be reliable now. Vic"*

On July 15, 2011, <alex@asapcomputerparts.com> (SIGUA) responded to <victor@dtiny.com> (Caron) in an email message, which stated the following:

> c. From SIGUA to Caron: *"All new original? can you ship today?"*

12. On July 18, 2011, I spoke to Carter regarding how Cisco products are packaged. Carter stated that Cisco products are always packaged to the manufacturer's specifications; therefore there would be no need for a vendor to discuss different ways to package the product. Additionally, Cisco does not ship labels or packaging materials to their customers and at no time would a Cisco partner be required to place Cisco labels on legitimate Cisco products.

13. On July 18, 2011, I reviewed two (2) email messages sent to <victor@dtiny.com> (Caron) from <alex@asapcomputerparts.com> (SIGUA), provided to HSI agents by Caron, in which SIGUA requests that Caron cancel all of his orders from ASAP. In the first message, SIGUA requested that Caron inform him immediately if he planned to ship his orders on the date of the message, which was sent at 11:09 AM on July 18, 2011. After not receiving a

9

prompt response, SIGUA followed up with a second message at 1:57 PM in which he instructed Caron to cancel all his orders with ASAP.

14. Based on my training and experience as well as conversations I have had with Cisco representatives, I know that an original Cisco vendor would not be required to label Cisco product. Additionally, I know that people who are smuggling counterfeit items through U.S. Customs and Border Protection (CBP) will often ship the product unbranded. The branding marks such as labels are then shipped separately. This is done for many reasons; the main reason is because labels are inexpensive relative to the good. Therefore, if the labels are seized, the loss to the importer is minimized.

### SIGUA USES ASAP TO TRAFFIC IN COUNTERFEIT CISCO GOODS

15. I reviewed DTI documents, supplied to me by Caron. These documents reflected United Parcel Service (UPS) and Federal Express (FedEx) shipping receipts, along with their associated purchase orders and sales invoices. The shipments were purchased by ASAP from DTI and shipped by DTI to multiple companies, some of which are located in the Central District of California. HSI agents also spoke with Carter, who provided the Manufacturer Suggested Retail

Price (MSRP) of genuine Cisco products. Some of the shipments from DTI to ASAP's customers are described below.

    a. On January 4, 2010, via UPS Ground, DTI drop shipped counterfeit Cisco goods for ASAP to Ricom Inc. at PO# 227981, 188-G Technology Drive, Irvine, CA 92618. Per ASAP's purchase order request #2984, ASAP purchased from DTI; fourteen (14) GLC-T at a cost of $85 each. (HSI agents spoke to Cisco representatives and learned that the MSRP for these parts, if genuine, is $395 each).

    b. On July 16, 2010, via UPS Ground, DTI drop shipped counterfeit Cisco goods for ASAP to PC Lantech Incorporated at 27021 Brighton Lane, Lake Forest, CA 92630. Per ASAP's purchase order request #3133, ASAP purchased from DTI, twenty (20) GLC-SX-MM at a cost of $50 each. (HSI agents spoke to Cisco representatives and learned that the MSRP for these parts, if genuine, is $500 each).

### CURRENT PURCHASE OF COUNTERFEIT CISCO PRODUCTS

16. On July 18, 2011, I reviewed ASAP purchase order #3576 dated July 15, 2011, from ASAP Computer Parts, Inc., located at 11039 Legacy Blvd., Unit #303, Palm Beach Gardens, FL. The purchase order was to DTI and requested that DTI supply ASAP with eight (8) GLC-SX-MM at a cost of $50 each (I spoke to Cisco representative Kenny Carter and learned that the MSRP for these parts, if genuine, is $500

each), ten (10) GLC-LH-SM for $60 each (I spoke to Cisco representative Kenny Carter and learned that the MSRP for these parts, if genuine, is $995 each), and four (4) WS-G5483 at a cost of $75 each (I spoke to Cisco representative Kenny Carter and learned that the MSRP for these parts, if genuine, is $395 each). Additionally, DTI supplied ASAP with a FedEx shipping label to ship the parts to Dow Chemical at 1761 Rte 12, Gales Ferry, CT 06335.

### ADDITIONAL INFORMATION

17. On July 18, 2011, I spoke to Caron who told me that all of the products ASAP purchased from Caron at DTI were counterfeit Cisco.

CONCLUSION

18. Based on the facts set forth herein, and on my experience and training in investigating cases involving violations of federal law and other experienced agents with whom I have consulted, I submit there is probable cause to believe that Alex SIGUA has committed violations of Title 18, United States Code, Section 1341 (Mail Fraud).

/S/
_____
JEFF MASIAK
Special Agent, ICE

Subscribed and sworn to before me this 19th day of July 2011.

**MARC L. GOLDMAN**
_____
United States Magistrate Judge